1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9             EASTERN DISTRICT OF CALIFORNIA

10

11   SUZANNE MONCRIEF,                    No. 2:10-cv-00534-MCE-KJN

12          Plaintiff,

13      v.                          **MEMORANDUM AND ORDER**

14   STANDARD INSURANCE COMPANY,

15          Defendant.

16                        ----oo0oo----

17      Presently before the Court is a motion for summary judgment

18   filed by Defendant Standard Insurance Company ("Standard").

19   Standard seeks a judicial determination from the Court that the

20   group insurance plan at issue in this litigation is governed by

21   the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et

22   seq. ("ERISA").  In seeking that determination, Standard's

23   objective is to limit Plaintiff Suzanne Moncrief's potential

24   remedies here to those available under ERISA as opposed to

25   remedies pertaining to the common law "bad faith" claim, for

26   breach of the implied covenant of good faith and fair dealing,

27   that Plaintiff has currently alleged.  As set forth below,

28   Standard's motion will be granted.

                              1

1

**BACKGROUND**

2

3        This matter arises from the June 23, 2008 death of Rick

4   Moncrief in San Francisco.  An autopsy revealed, in addition to

5   alcohol, the presence of numerous drugs in Mr. Moncrief's body,

6   including Soma, a muscle relaxant, Vicodin and dyhydrocodeine

7   (both narcotic painkillers), Ambien, a sleeping aid, and Celexa,

8   an anti-depressant.  Medical examiner ruled that Moncrief died of

9   acute mixed drug intoxication.  Moncrief's medical records

10  revealed drug abuse issues over the previous two years, including

11  a self-referral in December of 2006 to address Vicodin abuse

12  issues, and an assessment as a "substance abuser" just five

13  months before his death.

14       At the time of his death, Moncrief worked for the Glenn-

15  Colusa Irrigation District ("District").  As an employee of the

16  District, Moncrief was a participant in a group insurance policy

17  issued by Standard on January 1, 2001 to the Association of

18  California Water Agencies ("ACWA") Service Corporation.  ACWA is

19  a private not-for-profit mutual benefit corporation engaged in

20  advocacies and lobbying on behalf of its member water agencies.

21       The Glenn-Colusa Irrigation District had been a

22  participating employer in the policy issued by Standard to the

23  ACWA Service Corporation since its inception.  It is undisputed

24  that when Standard's policy was issued, it included both public

25  and private employers.

26  ///

27  ///

28  ///

1  The life and accidental drug and dismemberment ("AD&D") coverage

2  available under the policy was "noncontributory", meaning that

3  all premium payments were made by the employer as opposed to the

4  employees themselves.  Moreover, by its terms the coverage was

5  mandatory rather than voluntary for all eligible employees.

6       Standard paid Moncrief's life insurance benefit, but denied

7  an additional AD&D claim made by his widow, Plaintiff Suzanne

8  Moncrief ("Plaintiff") on grounds that such benefits were not

9  payable when death was caused by "[t]he voluntary use of

10 consumption of any position, chemical compound or drug, unless

11 used or consumed according to the directions of a physician."

12 See Ex. A, p. 4 to the Aff. of Holly Keeton in Support of Mot.

13 for Summ. J.

14      Although it appears undisputed that the policy accrued to

15 the benefit of both public and private employers at the time of

16 its issuance in 2001, by amendment dated March 1, 2007, the named

17 policyholder was changed from ACWA Service Corporation to ACWA

18 Health Benefits Authority, which the ACWA website claims is a

19 public agency responsible for the administration of employee

20 benefit plans available to public agency members.  Standard

21 claims that the policy still allowed multiple employers to

22 participate, however, with no requirement that employee

23 participants be governmental employees.

24 ///

25 ///

26 ///

27 ///

28 ///

3

1    Plaintiff nevertheless alleges that before her husband's

2  death Standard was notified that the ACWA plan no longer included

3  any private employees.  Although Standard changed certain ERISA

4  disclosures as a result of that notification, it takes issue with

5  the contention that no private employers remained covered under

6  the ACWA plan.  It points out the fact that ACWA itself, a

7  California corporation, remains a participating employer under

8  the plan.

9    Standard's rejection of Plaintiff's AD&D claim led to the

10 filing of the instant lawsuit, which is predicated on a common

11 law claim (for breach of the implied covenant of good faith and

12 fair dealing) as a result of that denial.  Standard now asks the

13 Court to determine as a matter of law that Plaintiff's common law

14 claim in that regard is preempted by the provisions of ERISA, and

15 that Plaintiff's complaint must accordingly be amended to delete

16 the claim as unavailable for a policy subject to ERISA.

17

18                          **STANDARD**

19

20    The Federal Rules of Civil Procedure provide for summary

21 judgment when "the pleadings, depositions, answers to

22 interrogatories, and admissions on file, together with

23 affidavits, if any, show that there is no genuine issue as to any

24 material fact and that the moving party is entitled to a judgment

25 as a matter of law."  Fed. R. Civ. P. 56(c).

26 ///

27 ///

28 ///

4

1  One of the principal purposes of Rule 56 is to dispose of

2  factually unsupported claims or defenses.  Celotex Corp. v.

3  Catrett, 477 U.S. 317, 325 (1986).  Under summary judgment

4  practice, the moving party

5      "always bears the initial responsibility of informing
       the district court of the basis for its motion, and
6      identifying those portions of 'the pleadings,
       depositions, answers to interrogatories, and admissions
7      on file together with the affidavits, if any,' which it
       believes demonstrate the absence of a genuine issue of
8      material fact."

9  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting

10 Rule 56(c).

11     If the moving party meets its initial responsibility, the

12 burden then shifts to the opposing party to establish that a

13 genuine issue as to any material fact actually does exist.

14 Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

15 585-587 (1986); First Nat'l Bank v. Cities Ser. Co., 391 U.S.

16 253, 288-289 (1968).

17     In attempting to establish the existence of this factual

18 dispute, the opposing party must tender evidence of specific

19 facts in the form of affidavits, and/or admissible discovery

20 material, in support of its contention that the dispute exists.

21 Fed. R. Civ. P. 56(e).  The opposing party must demonstrate that

22 the fact in contention is material, i.e., a fact that might

23 affect the outcome of the suit under the governing law, and that

24 the dispute is genuine, i.e., the evidence is such that a

25 reasonable jury could return a verdict for the nonmoving party.

26 Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52

27 (1986); Owens v. Local No. 169, Assoc. of Western Pulp and Paper

28 Workers, 971 F.2d 347, 355 (9th Cir. 1987).

1  Stated another way, "before the evidence is left to the jury,

2  there is a preliminary question for the judge, not whether there

3  is literally no evidence, but whether there is any upon which a

4  jury could properly proceed to find a verdict for the party

5  producing it, upon whom the onus of proof is imposed." Anderson,

6  477 U.S. at 251 (quoting Improvement Co. v. Munson, 14 Wall. 442,

7  448, 20 L. Ed. 867 (1872)).  As the Supreme Court explained,

8  "[w]hen the moving party has carried its burden under Rule 56(c),

9  its opponent must do more than simply show that there is some

10  metaphysical doubt as to the material facts ... Where the record

11  taken as a whole could not lead a rational trier of fact to find

12  for the nonmoving party, there is no 'genuine issue for trial.'"

13  Matsushita, 475 U.S. at 586-87.

14

15                            **ANALYSIS**

16

17      Although the existence of an ERISA plan normally is a

18  question of fact (Credit Manager's Ass'n of So. Cal. v. Kennnesaw

19  Life and Acc. Ins. Co., 809 F.2d 617, 625 (9th Cir. 1987)), when

20  the material facts are not in dispute the necessary determination

21  can be made as a matter of law.  See Crull v. GEM Ins. Co.,

22  58 F.3d 1386, 1390 (9th Cir. 1995) (whether plan is subject to

23  ERISA may properly be resolved on summary judgment).

24      Here, although Rick Moncrief's employer, the Glenn-Colusa

25  Irrigation District, was undisputedly a public entity, the

26  employee benefits policy at issue, as purchased by the District,

27  was issued to ACWA Services Corporation, a California

28  corporation.

1  The policyholder is therefore the ACWA Services Corporation and

2  not the District.  The District voluntarily chose to participate

3  in a policy that included private employers and was issued to a

4  private entity (ACWA being chartered as a California corporation

5  under the California Corporations Code rather than as a public

6  entity under the California Government Code).

7       In its 1974 passage of ERISA, which federalized much of

8  employee benefit law, Congress included broad preemption

9  provisions to insure uniformity and consistency.  See Ingersoll-

10 Rand Co. v. McClendon, 498 U.S. 133, 137 (1990).  ERISA preempts

11 state law causes of action that offer remedies for the violation

12 of rights expressly guaranteed by ERISA and exclusively enforced

13 by ERISA's civil enforcement mechanism.  Tingey v. Pixley-

14 Richards West, Inc., 953 F.2d 1124, 1130 (9th Cir. 1992).  In the

15 present case, there is no dispute that if Standard's policy is

16 subject to the provisions of ERISA, the state common law claims

17 for bad faith asserted by Plaintiff are preempted and therefore

18 unavailable.

19      An employee welfare benefit plan is subject to ERISA if it

20 is (1) a plan, fund or program; (2) established or maintained;

21 (3) by an employer or by an employer organization, or by both;

22 (4) for the purpose of providing medical, surgical, hospital

23 care, sickness, accident, death, disability or other program

24 benefits; (5) to participants or their beneficiaries.  Kanne v.

25 Conn. General Life Ins. Co., 867 F.2d 489, 491-92 (9th Cir.

26 1988).

27 ///

28 ///

1   Standard's plan falls within this broad definition of a plan

2   covered by ERISA.  Indeed, as Standard points out, the ACWA

3   Services Corporation requested that ERISA information be included

4   within the initial plan documents, apparently because everyone

5   understood that an ERISA plan was being established.  See Stuart

6   v. UNUM Life Ins. Co., 217 F.3d 1145, 1154 (9th Cir. 2000)

7   (policy reference to ERSIA evidences intent to create a plan

8   governed by ERISA).

9   Plaintiff nonetheless argues that the plan under which Rick

10  Moncrief was covered must be deemed a "governmental plan", and as

11  such subject to an explicit statutory exception to the purview of

12  ERISA.  29 U.S.C. § 1003(b)(1); see Silvera v. Mutual Life. Ins.

13  Co. of New York, 884 F.2d 423 (9th Cir. 1989).  "The term

14  'governmental plan' means a plan established or maintained for

15  its employees by the Government of the United States, by the

16  government of any State of political subdivision thereof, or by

17  any agency or instrumentality of any of the foregoing."

18  29 U.S.C. § 1002(32).

19  Here, the plan as issued included both public and private

20  employers.  In Kendall v. Standard Ins. Co., 17 F. Supp. 2d 1128

21  (E.D. Cal. 2003), the Eastern District addressed the question of

22  whether such a mixed plan falls within the governmental plan

23  exception in the context of the same ACWA plan that is the

24  subject of this litigation.

25  ///

26  ///

27  ///

28  ///

8

1  In Kendall, the participating employer in question was the Joint

2  Powers Insurance Authority, an organization[1] described as

3  "providing insurance services solely to the public agencies

4  within ACWA."  Id. at 1129 (emphasis added).  The plaintiff in

5  Kendall, like the Plaintiff herein, argued that because public

6  water districts were included within ACWA, ACWA and its plan

7  should be deemed an instrumentality or public subdivision of the

8  state for ERISA purposes.  The court rejected that argument,

9  reasoning as follows:

10      "[T]o hold, as plaintiffs argue, that the ACWA Plan is
         an ERISA-exempt governmental plan would permit ACWA's
11       private members to circumvent the provisions of ERISA
         merely by participating in the ACWA Plan.  ERISA was
12       intended to broadly cover all private employers....
         Accordingly, if a public entity chooses to participate
13       in an ERISA plan that includes private employers, that
         public entity's plan becomes subject to the provisions
14       of ERISA....To be entitled to the governmental plan
         exception- a narrow exception to ERISA coverage- a
15       public entity must take steps to insure that the plan
         includes only public participants."

16

17  Kendall v. Standard Ins. Co., 17 F. Supp. 2d at 1132.

18      This Court adopts Kendall's reasoning as persuasive.  The

19  fact that a given employer is public or private is not the

20  dispositive factor in determining whether a policy of group

21  insurance is subject to ERISA.

22  ///

23  ///

24  ///

25  _____

26  [1] Although Plaintiff alleges that the Joint Powers Insurance
    Authority, unlike Rick Moncrief's employer, was a private entity,
27  a careful review of the Kendall opinion reveals no unequivocal
    support for that proposition.  To the contrary, in addition to
28  working only with public entities, and very use of the term
    "Authority" suggests a public, rather than private, organization.

9

1  Instead, the status of the plan itself, and specifically whether

2  it includes private employers that are covered by ERISA, must be

3  determinative, since otherwise a plan could escape ERISA

4  protections simply by including private employees in addition to

5  individuals working for public entities.  The Court accordingly

6  rejects the argument, as advocated by Plaintiff, that the

7  applicability of ERISA should be bifurcated within the policy

8  itself between governmental and non-governmental employees.  As

9  this Court has already noted in another case, any "contention

10 that it is possible to divide ERISA plans into ERISA and non-

11 ERISA portions has been universally rejected."  Stenson v.

12 Jefferson Pilot Financial Ins. Co., 2007 WL 1795757 at *3 (E.D.

13 Cal. 2007).  Instead, employee benefit programs are to be

14 "construed as a whole."  Id.[2]

15     The fact that Standard's Plan arguably changed in character

16 in 2006 does not alter this analysis.  Once subject to ERISA, a

17 policy retains its ERISA character irrespective of whether plan

18 participants change.  Peterson v. Am. Life and Health Ins. Co.,

19 48 F.3d 404, 408 (9th Cir. 1995); see also In re Stern, 345 F.3d

20 1036, 1041 (9th Cir. 2003) (ERISA status of employee welfare

21 benefit plan determined by reference to the past).

22 ///

23

24     [2] The Court recognizes Plaintiff's reliance on the Ninth
   Circuit's decision in Silvera v. Mutual Life Ins. Co. of New
   York, supra, in arguing that if insurance is purchased by a
25 governmental entity, the policy should be exempt from ERISA.
   Silvera, however, is distinguishable.  It referred to the
26 nongovernmental status of the plan insurer, and not the status of
   the entities who established the plan, as addressed by Kendall.
27 Additionally, Silvera involved a plan issued to a single employer
   (the City of Oroville) rather than the ACWA plan at issue here
28 which involved multiple employers.

10

1   Nor is the Standard plan exempt from treatment as an ERISA

2   plan under the so-called "safe harbor" exemption.  That

3   exemption, as set forth in 29 C.F.R. § 2510.3, is available only

4   if four separate criteria are satisfied.  <u>Stuart v. UNUM Life</u>

5   <u>Ins. Co. of America,</u> 217 F.3d 1145, 1149-53 (9th Cir. 2000).

6   Those criteria include a prohibition on the employer making the

7   contributions necessary to obtain the coverage, a requirement

8   that the plan owner (in this case, ACWA) not "endorse" the

9   coverage, and a requirement that employee participation be

10  voluntary.  <u>Id.</u>  Here, it is uncontroverted not only that the

11  employer, and not the employee, pays for the coverage, but also

12  that employee contribution is in fact mandatory.  On either

13  ground, the "safe harbor" exemption fails.  As the Ninth Circuit

14  has recognized, "an employer's failure to satisfy [even] one of

15  the safe harbor's four requirements conclusively demonstrates

16  that an otherwise qualified group insurance plan is an employee

17  welfare benefit plan subject to ERISA."  <u>Id.</u> at 1150.

18

19                          **CONCLUSION**

20

21  For all the foregoing reasons, summary judgment as requested

22  by Standard is appropriate.  Defendant Standard's Motion for

23  Summary Judgment (ECF No. 8) is accordingly GRANTED.[3]  The Court

24  finds, as a matter of law, that the group insurance plan at issue

25  in this litigation is governed by ERISA.

26

27       [3] Because oral argument would not be of material assistance,
    this matter was deemed appropriate for submission on the briefs.
28  E.D. Cal. Local Rule 230(g).

1  Plaintiff is accordingly directed to file, within twenty (20)

2  days following the date of this Memorandum and Order, a First

3  Amended Complaint deleting any reference to state common law

4  claims, like breach of the implied covenant of good faith and

5  fair dealing as currently pled by Plaintiff, that are unavailable

6  under ERISA.

7     IT IS SO ORDERED.

8   Dated: January 13, 2011

9

10

11         _____
           MORRISON C. ENGLAND, JR.
           UNITED STATES DISTRICT JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12